IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| 21st CENTURY CENTENNIAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 12-702-CG-M |
| AMANDA TAYLOR | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a declaratory judgment action in which plaintiff asks the court to declare that it owes no coverage to defendant under the uninsured motorist provision in a policy in which the defendant was insured.  The matter is now before the court on plaintiff's motion for summary judgment (Doc. 23), defendant's opposition (Doc. 26), and plaintiff's reply (Doc. 28).   For the reasons explained below, the court finds that Defendant Amanda Taylor failed to give her insurance carrier, Plaintiff 21st Century Centennial Insurance Company, sufficient prior notice of the offer of settlement and release she entered into with the alleged tortfeasors.  As a result, Taylor forfeited her right to claim underinsured motorist benefits under her policy of insurance with 21st Century for the incident.  Accordingly, the court finds that summary judgment should be entered in favor of 21st Century.

## FACTS

This case arises from insurance claims made with regard to a single-car automobile accident that occurred on November 13, 2010. (Doc. 1).  Defendant, Amanda Taylor, was involved in the accident as a passenger in a vehicle that was being operated by Jaleesa McCorvey.  McCorvey was insured by a policy of insurance with Progressive Insurance Company that had a policy limit of $25,000/person for bodily injury. (Doc. 27-1, pp. 12-14).  Taylor was insured by a policy issued by the plaintiff, 21st Century Centennial Insurance Company ("21st Century").[1]  (Doc. 24-1).

The 21st Century policy includes the following provision with regard to uninsured motorist coverage:

> A person seeking Uninsured Motorists Coverage must also:
> A.   Send *us* copies of the legal papers if a lawsuit is commenced;
> B.   Notify *us* in writing of an offer of settlement between the *insured* and the owner or operator of the *uninsured motor vehicle*, or that person's liability insurer; and
> C.   Allow *us* 30 days after notice of an offer of settlement to advance payment to that *insured* in an amount equal to the offer in order to preserve all rights against the insurer, *owner*, and operator of such *uninsured motor vehicle*.

(Doc. 24-1, p. 12, emphasis in original).

> A.   If *we* make a payment under this policy and the person to or for whom payment was made has a right to recover damages from

---

[1] The policy was issued to Rebecca Taylor but listed plaintiff as a driver. (Doc. 24-1, p. 3).

another, *we* shall be subrogated to that right.  That person shall
do:

1. Whatever is necessary to enable *us* to exercise *our* rights; and
2. Nothing after *loss* to prejudice *our* rights.

\* \* \*

*Our* rights do not apply under Paragraph **A.** with respect to
coverage under Section **B.3.** of the definition Uninsured Motorists
Coverage if we:

1. Have been given prompt written notice of a tentative
settlement between an *insured* and the insurer of an
*uninsured motor vehicle* and
2. Fail to advance payment to the *insured* in an amount equal
to the tentative settlement within 30 days after receipt of
notification.

(Doc. 24-1, p. 19, emphasis in original).

By letter dated January 5, 2011, Taylor's counsel requested information

regarding Taylor's insurance policies and notified Farmers Insurance Company[2]

that she was represented by counsel and "will seek all benefits available under

these policies, including liability, uninsured/ underinsured motorist coverage, PIP

coverage, MED pay if applicable." (Doc. 27-1, p. 37).  By fax dated March 14, 2011,

Taylor provided 21st Century with an application for benefits and proof of loss form,

an authorization for release of health information, an authorization to obtain

information and a copy of the police report. (Doc. 27-1, pp. 39-45).

---

[2] The court notes that much of the communication with 21st Century was through
Farmers Insurance Company.  Although neither of the parties explain or even
mention the relationship, 21st Century is apparently part of the Farmers Insurance
Group.

A letter dated December 7, 2011 to Farmers Insurance, demanded damages on behalf of Taylor for the automobile accident. (Doc. 27-1, pp. 2-10).  The demand letter described in detail the accident, Taylor's resulting medical treatment, and the effect the accident had on Taylor's life. (Doc. 27-1, pp. 2-8).  The letter demanded $500,000.00 or the policy limits. (Doc. 27-1, p. 10).  The letter further explained that Ms. McCorvey had only $25,000.00 in bodily injury insurance coverage and states that Taylor "is entitled to recover from Farmers Insurance Company as her uninsured motorist carrier for her damages, offset by the $25,000.00 she expects to recover from Ms. McCorvey's insurance carrier." (Doc. 27-1, p. 10).

By letter dated December 23, 2011, Farmers Insurance confirmed that it had received Taylor's demand and stated that they were unable to properly evaluate or extend an offer because Taylor had not provided any medical bills. (Doc. 27-1, p. 50). By letter dated January 12, 2012, Taylor's counsel provided copies of Taylor's medical bills totaling $46,621.30. (Doc. 27-1, p. 52).  Farmer's Insurance responded with a letter seeking information about a previous injury Taylor had sustained. (Doc. 27-1, p. 54).  By letter dated February 6, 2012, Taylor provided a description of the previous injury. (Doc. 27-1, p. 56).  Farmers Insurance replied on March 12, 2012 that it still needed "the status of the Bodily Injury claim Ms. Taylor presented to Progressive Insurance Company." (Doc. 27-1, p. 58).  A letter, dated March 23, 2012, confirmed that Farmers Insurance received Taylor's letter of March 19, 2012

4

"in which you outline you have settled Ms. Taylor's bodily injury claim with

Progressive Insurance Company" and requested an executed copy of the release.

(Doc. 27-1, p. 60).  However, Taylor had not yet executed the release.  Taylor

executed the "Limited Bodily Injury Release" on May 7, 2012 and forwarded a copy

of the release to Farmers Insurance on May 9, 2012.  The release includes the

following statements:

> I/We, Amanda D. Taylor, a single individual, for and in consideration of
> the sum of **Twenty-five Thousand Dollars and Zero Cents**
> ($25,000.00), the receipt of which is hereby acknowledged, do hereby for
> myself/ hereby release and forever discharge Ronald R. McCorvey and
> The Estate of Jaleesa S. McCorvey from any and all claims, actions,
> causes of action, demands, damages, costs and any compensation
> whatsoever, including any claims for loss of consortium, which the
> undersigned now has/have or which may hereafter accrue on account of
> or in any way arising out of an accident which occurred on or about
> November 13, 2010, at or near I-10 and Highway 87, Santa Rosa
> County, Florida, ourselves to the extent that there is no other available
> insurance which provides coverage for the claims being
> released/discharged.
>
> The undersigned reserve(s) their right to pursue and recover all claims,
> including but not limited to, future medical expenses, health care and
> related expenses from any person, firm, or organization who may be
> responsible for payment of such expenses, including any first party
> health or first party automobile coverage, if so entitled.  However, said
> reservation does not include the party(ies) released who is/are given a
> full and final release of all claims.
>
> Nothing herein shall be construed to release, remise, or discharge any
> person, entity or subsequent tortfeasor other than the parties
> specifically named in this release for the specific incident described.  No
> claim for medical negligence / malpractice which the undersigned now
> has, or hereafter may have, arising out of the incident described herein
> is released.

> **The execution of this Release does not affect the property damage portion of this claim, if any.**
>
> It is understood and agreed that this settlement is in full compromise of a disputed claim as to questions of liability and as to the nature and extent of the injuries and damages.  Further, neither this release, nor the payment pursuant hereto, shall be construed as an admission of liability.

(Doc. 27-1, p. 63, emphasis in original).

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc.,

284 F.3d 1237, 1243 (11th Cir. 2002) (quoting <u>Anderson</u>, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See <u>Anderson</u>, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. <u>O'Ferrell v. United States</u>, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." <u>Miranda v. B&B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing <u>Mercantile Bank & Trust v. Fidelity & Deposit Co.</u>, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Company</u>, 32 F.3d 520, 524 (11th Cir. 1994)(citing

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## B. Notice of Settlement

21st Century asserts that Taylor settled her claims against the estate of Jaleesa McCorvey and the owner of the vehicle, Robert McCorvey, without consent and with no notice to 21st Century.  In <u>Lambert v. State Farm Mutual Auto Ins.</u>

Co., 576 So.2d, 167 (1991), the Supreme Court of Alabama set forth the general procedure that should be followed in cases in which the rights of the insured and the underinsured motorist insurance carrier may conflict.  First, the Lambert Court stated that notice of the claim for underinsurance should be provided "as soon as it appears that the insured's damages may exceed the tortfeasor's limits of liability coverage." Id. at 167.   Second, before agreeing to any settlement that would release the tortfeasor from liability, the insured "should immediately notify the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release." Id.  Third, when the insured notifies the carrier of the proposed settlement, she "should also inform the carrier as to whether the insured will seek underinsured motorist benefits" and "the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits." Id.  Fourth, the insured should not settle with the tortfeasor without first allowing the underinsured motorist carrier a reasonable time to investigate and notify its insured of its proposed action. Id.  Fifth, if the carrier refuses to consent, denies the claim without good faith investigation, or does not investigate within a reasonable time, the carrier thereby waives its subrogation rights. Id.  Lastly, if the carrier "wants to protect its subrogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the

carrier's insured, advance to its insured an amount equal to the tort-feasor's settlement offer." Id.

Taylor contends that she gave notice of her intent to settle and to seek underinsured motorist coverage in the December 7, 2011 demand letter. The demand letter informed 21st Century that Ms. McCorvey had only $25,000 in coverage, that she expects to recover $25,000 from McCorvey's insurance carrier and that she was seeking $500,000 in damages from 21st Century. At that time, 21st Century was aware that Taylor intended to seek uninsured motorist coverage and was able to begin investigating the claim. In fact, 21st Century began investigating the claim to some extent, as it requested and received copies of Taylor's medical bills and information about a previous injury Taylor had sustained. Taylor did not settle with Ms. McCorvey and the owner of the vehicle, Ronald R. McCorvey, until March 2012, more than three months after the demand letter.

21st Century on the other hand, contends that her notification that she expected to recover $25,000 did not satisfy the requirement stated in Lambert that, before agreeing to any settlement that would release the tortfeasor from liability, she immediately notify them of the proposed settlement and the terms of any proposed release. Additionally, 21st Century argues that it also does not comply with the requirement in the policy that she notify them in writing of an offer of settlement and allow them 30 days after notice of the offer of settlement to advance

payment to her in an amount equal to the offer.  It was not until March 19, 2012,

after 21st Century requested an update on the status of her claim, that Taylor

informed 21st Century that she had settled with the McCorveys' insurance carrier.

21st Century then requested a copy of the release which Taylor forwarded on May 9,

2012.

In Ex parte Morgan, 13 So.3d 385 (2009), the Alabama Supreme Court

addressed a somewhat similar case to the one before this court.  In Morgan, the

Morgans were injured in an automobile accident and filed suit against the driver of

the car they collided with. Id. at 386.  The Morgans informed their carrier in May

and June 2005 of their claim against the other driver and that they anticipated that

the uninsured motorist coverage would be at issue. Id.  On June 1, 2005, the

Morgans forwarded to their insurance carrier copies of the pleadings in the action.

Id.  The insurance company did not join in the action against the tortfeasor. Id.  On

October 17, 2005, the Morgans notified their carrier of a proposed settlement for the

policy limits and made a demand for additional sums under the uninsured motorist

portion of their policy. Id.  On October 27, 2005, the Morgans accepted the

settlement offer and executed a general release. Id.  The Morgan Court found that

the notice period began on October 17, 2005, when the Morgans provided notice of

the proposed settlement. Id. at 389.   The court further found that the 10 day notice

was insufficient since 1) the notice did not request a response from the carrier by a

11

particular date and did not suggest any reason why the settlement had to be entered into by a certain date, 2) the Morgans failed to follow up with their carrier and 3) medical records attached to the notice raised issues regarding liability, the amount of damages and causation. Id. at 389-390.

In the instant case, as in Morgan, Taylor notified her carrier of her claim against the tortfeasor and of her intent to seek uninsured motorist coverage. Thus, the insurance company was aware of the claim and was able to begin investigating at that time. In Morgan, the carrier was notified of an actual offer of settlement 10 days before the settlement was entered into, but was not alerted that there was any time constraint. The Court found that the notice was insufficient. The prior notice that the Morgans expected to seek underinsured motorist benefits was not sufficient to put their insurance carrier on notice or to require the insurance carrier to investigate and determine whether they would consent to any settlement. In the instant case, Taylor gave no prior notice of an actual settlement offer prior to entering into the settlement.

Taylor asserts that her December 7, 2011, demand letter did provide notice of settlement because it stated that she "expects to recover [$25,000.00] from Ms. McCorvey's insurance carrier." "Expect" is defined in Webster's New College Dictionary, Third Edition (2008) as "to look forward to the probable occurrence or appearance of," or "to consider likely or certain." However, a statement that a

12

claimant considers likely or certain that she will recover something before she has

filed suit or begun negotiating is nothing more than an expression of hope.  Taylor's

expectations might not have ever come to fruition.  21st Century had notice that

Taylor claimed that McCorvey was liable and that Taylor had incurred damages,

but was not required to participate in her claim against McCorvey and did not know

for certain whether Taylor would succeed in her claim against McCorvey or that she

would for certain recover the amount she expected.   21st Century did not receive

any notice that McCorvey or her insurance company had offered to settle or that

they had even begun negotiating a settlement.  21st Century also had no

confirmation that McCorvey or her insurance company agreed with Taylor

regarding her assertion that McCorvey was liable or that McCorvey's policy limit for

Taylor's injuries was $25,000.00.  Taylor did not provide 21st Century with any

updates regarding how her claim against the McCorveys was proceeding and 21st

Century could not be expected to decide whether it would consent to a settlement

when no settlement had been offered.

Taylor claims that this case is different from Morgan because the policy at

issue in this case does not contain a consent to settle clause and a forbearance of

150 days before signing the release.  According to Taylor, 21st Century has waived

its subrogation rights because the policy requires that if it receives "prompt written

notice of a tentative settlement between an ***insured*** and the insurer of an

13

*uninsured motor vehicle*" it must "advance payment to the ***insured*** in an amount equal to the tentative settlement within 30 days after receipt of notification." (Doc. 24-1, p. 19, emphasis in original).  However, as discussed above, 21st Century did not receive notice of a tentative settlement, only notice that Taylor expected to recover the policy limits of the tortfeasor's insurance policy.  The defendant's policy required Taylor to "[n]otify [21st Century] in writing of an offer of settlement."  (Doc. 24-1, p. 19).  Taylor clearly failed to provide notice of an <u>offer</u> of settlement.  21st Century did not receive the 30 days allowed by the policy for it to consider the settlement offer and to advance payment to Taylor to preserve "all rights against the insurer, ***owner***, and operator of such ***uninsured motor vehicle***." (Doc. 24-1, p. 19, emphasis in original).  Therefore, 21st Century did not waive its subrogation rights under the policy.

Taylor also asserts that the release is a limited rather than a full release. The release is titled "Limited Bodily Injury Release," but it releases the McCorveys from "any and all claims, actions, causes of action, demands, damages, costs and any compensation whatsoever." (Doc. 27-1, p. 63).  Taylor points out that the above clause is modified by the following: "to the extent that there is no other available insurance which provides coverage for the claims being released/discharged." (<u>Id.</u>). Later in the document, the release purports to reserve Taylor's right to pursue and recover all claims against "any person, firm, or organization who may be responsible

14

for payment of such expenses, including any first party health or first party automobile coverage." (Id.).  However, the release specifies that "said reservation does not include the party(ies) released who is/are given a <u>full</u> and <u>final</u> release of all claims." (Id., emphasis added).  Later, it again states that: "It is understood and agreed that this settlement is in <u>full</u> compromise of a disputed claim as to questions of liability and as to the nature and extent of the injuries and damages." (Id., emphasis added).   The release does not expressly release all of Taylor's claims against 21st Century (in fact it states that it does not release such claims), but it clearly releases all of Taylor's claims against the McCorveys.

While Taylor does not expressly release her claims against 21st Century in the release, the release results in 21st Century losing its subrogation rights against the McCorveys.  For 21st Century to maintain a claim against the McCorveys or their insurance company, it must subrogate to Taylor's rights.  21st Century can only use subrogation to put itself in Taylor's shoes and if Taylor no longer has any rights, neither does 21st Century.

> An insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only the rights the insured possesses at the time the insurer pays the insured. In other words, the rights of the insurer against the wrongdoer cannot rise higher than the rights of the insured against the wrongdoer, because the insurer, as subrogee, stands in the place of the insured and succeeds to whatever rights he or she may have in the matter.

AM. JUR. 2d *Insurance* § 1775 (2013) (footnotes omitted).  Taylor has offered no valid

authority for varying from the above tenet in this instance.  Once Taylor released

her rights, there were no rights left for 21st Century to subrogate against.  It also

does not matter that the McCorveys' insurance carrier is not named in the release.

If all of its insureds are released, then the insurance carrier has no remaining

covered claims.  21st Century can only seek coverage from the McCorveys' insurance

carrier to the extent 21st Century has a claim against the McCorveys.


### CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment (Doc.

23), is **GRANTED**.

**DONE and ORDERED** this 25th day of June, 2013


/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE


16